Virginia FRAZIER et al., Plaintiffs,

v.

UNITED STATES of America,
Defendant.

No. C–78–2672–SC.

United States District Court,
N. D. California.

Sept. 21, 1979.

John C. Stein, Boccardo, Lull, Niland & Bell, San Francisco, Cal., for plaintiffs.

G. William Hunter, U. S. Atty., N. D. California, San Francisco, Cal., for defendant.

## ORDER

CONTI, District Judge.

This action is brought against the United States pursuant to the Federal Tort Claims Act, *28 U.S.C. § 1346.* The matter is before the court on defendant's Motion for Summary Judgment.

Decedent was a manlift operator at a construction project known as Wycliffe Plaza, a residential high-rise structure for elderly persons. The premises on which the building was erected is located in Santa Ana and is owned by Wycliffe Associates, a California non-profit corporation. Wycliffe Associates selected and contracted with Hunt Construction Company as the general contractor to build the structure. Decedent was injured on April 30, 1976 when he was struck by a beam which had been accidentally dropped by two of Hunt's employees who were eleven stories up. Decedent later died from his injuries.

The United States was connected with the project through the Department of Housing and Urban Development (hereinafter HUD). HUD's interest in the construction of the building was limited to providing mortgage insurance and an interest subsidy pursuant to *12 U.S.C. § 1715z.*

By such contracts of insurance, HUD agrees to insure private lenders against any loss which may result from the lender's agreement to finance construction of a project. When HUD insures commercial

lenders against loss, HUD encourages investment of capital in low and moderate income housing. Under this mortgage insurance program, HUD also provides interest subsidies to lenders so that project owners pay off mortgages at very low interest rates and are able to set rents at a level affordable to lower income households.

In addition, HUD provides subsidies to cover the difference between the tenant's contribution and the actual costs of operating the project. Mortgagor-owners of insured projects are regulated by HUD as to rents or sales, charges, capital structure, rate of return and methods of operation.

Pursuant to this program, HUD entered into a contract of insurance on January 27, 1976 with the mortgagee, Forest City-Meridian Mortgage Corp., in which HUD agreed to provide mortgage insurance for construction advances for an amount up to $5,751,500. On March 9, 1977, HUD agreed to insure the mortgage for a total amount of $5,751,500 after completion of the project.

In order to effectuate agreements such as this, HUD employees have a right to make periodic inspections of the building sites. The purpose of these inspections is to determine that the amounts recommended by the architect for insured advances are reasonable and that construction is carried out in accordance with the contract documents.

The standard for summary judgment is a strict one. Before it may be granted, there must be two inquiries:

> "First, is there any genuine issue as to any material fact? Second, if there is no genuine issue of fact, then, viewing the evidence and the inferences which may be drawn therefrom in the light most favorable to the adverse party, is the movant entitled to prevail as a matter of law?"

*MGM Grand Hotel, Inc. v. Imperial Glass Co.*, 533 F.2d 486, 488 (9th Cir. 1976) (quoting *Radobenko v. Automated Equip. Corp.*, 520 F.2d 540, 543 (9th Cir. 1975)); *F.R. Civ.P. 56(c).*

■ The standard for recovery under the Federal Tort Claims Act is equally strict.

The Act "is a limited waiver of sovereign immunity, making the Federal Government liable to the same extent as a private party for certain torts of federal employees acting within the scope of their employment." *United States v. Orleans*, 425 U.S. 807, 813, 96 S.Ct. 1971, 1975, 48 L.Ed.2d 390 (1976). The language of *28 U.S.C. § 1346(b)* covers any injury or death caused by the negligent or wrongful act or omission of any employee of the government while acting within the scope of his office or employment. "Employee of the government" is defined in *28 U.S.C. § 2671* to include "officers or employees of any federal agency . . . in an official capacity . . . ." A contractor with the United States is not a federal agency. *Id.*

After a scrupulous examination of the facts and the applicable law, the court concludes that summary judgment is proper.

To begin with, the court finds no genuine issue of any material fact. Both parties agree that HUD had a right to inspect the construction in progress and did so inspect. Apparently, both sides also agree that if the HUD inspectors "on the job site found anything relating to job procedure that was unsafe or below standard they could have stopped that work." (Affidavit of John C. Stein # 13, at 3). Thus, to that extent, the HUD inspectors retained control over the project. (Id. # 14).

What is at issue here is not a factual question, but a legal one which revolves around the concept of negligence.

In a complaint filed November 16, 1978, plaintiffs contend that the United States "negligently and carelessly" (1) operated the Wycliffe Plaza project, (2) failed to provide safety devices, and (3) furnished the workers with faulty equipment. The complaint erroneously contends that all of the "agents, servants and employees working said project" were employed by the United States.

■ The traditional elements of negligence include a legal duty to use due care, a breach of such legal duty, and an injury which is the proximate or legal result of the

breach. 4 *Witkin, Summary of California Law* § 488, at 2749 (8th ed. 1974). Thus, the specific issue is whether HUD, as a mortgage insurer, had a duty to plaintiffs' decedent to inspect the job site to see if safe practices were being followed. Clearly, it did not.

Plaintiffs' Exhibit C explicitly states that the purpose of inspections of multifamily housing projects is "to protect the interest of HUD." (Page 4–1). "Inspections are made to evaluate the architect's performance, to obtain construction in accordance with the contract documents, and to report on conformance with the prevailing wage and other requirements." (*Id.*).

"The HUD inspector is not a superintendent for the contractor . . . ." (Page 4–3). He is present to "obtain construction which conforms to the drawings, specifications, and sound construction practices within the scope of the contract." (*Id.*). He is supposed to make "sufficient inspections to determine the adequacy and effectiveness of the inspections being made by the architect." (*Id.*). He also determines "that the amounts recommended by the architect for insured advances are reasonable" and that "construction is in accordance with the contract documents." (*Id.*). There is absolutely nothing in the record, and plaintiffs, as a matter of law,[1] can prove nothing to indicate that HUD owed a duty to decedent to inspect the job site for unsafe practices; as noted, HUD inspects the construction area only to protect its own interest as mortgage insurer and for no other reason.

Plaintiffs cite several cases in their opposing papers including *Thorne v. United States*, 479 F.2d 804 (9th Cir. 1973). There, the court stated that generally "the mere reservation of a right to inspect work performed by an independent contractor, including the right to stop work if precautions are not taken, does not impose upon the government any duty of inspection or control." 479 F.2d at 809 (citing *Roberson v. United States*, 382 F.2d 714 (9th Cir.

1967)). In this case, the connection between the plaintiffs' decedent and the United States is even more tenuous. Hunt, for whom decedent worked, was not an independent contractor with the United States; Hunt's contract was with Wycliffe Associates. So what the court said in *Thorne* applies even more forcefully to this matter.

To impose a duty of safety inspections on HUD in a case such as this would be an intolerable burden and one not in accord with the purpose underlying the Federal Tort Claims Act. The Supreme Court has stated that "[t]he Tort Claims Act was never intended, and has not been construed by the Court, to reach employees or agents of all federally funded programs that confer benefits on people." 425 U.S. at 813, 96 S.Ct. at 1975. To do otherwise would subject the government to suits brought by "countless unidentifiable classes of 'beneficiaries'." *Id.* at 816, 96 S.Ct. 1971.

Accordingly, it is hereby ordered that defendant's Motion for Summary Judgment is granted.

---

1. The existence of a legal duty is a question of law. 4 *Witkin, Summary of California Law* § 493, at 2756 (8th ed. 1974).